## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY | ) | |
| Plaintiff, | ) | |
| vs. | ) | CIVIL ACTION FILE |
| | ) | NO. 23-2576 |
| BENGAL CONVERTING SERVICES, INC.; ENVISTA FORENSICS, LLC. d/b/a AREPA; LINKS DEBT FUND LLC, THE VICTORY BANK AND COHEN & CLARK, P.C., | ) | |
| Defendants. | ) | |

## PLAINTIFF LANDMARK AMERICAN INSURANCE COMPANY'S COMPLAINT FOR INTERPLEADER

Pursuant to the Federal Rules of Civil Procedure and 28 U.S.C. § 1335, Plaintiff Landmark American Insurance Company ("Landmark") files this Complaint for Interpleader against defendants Bengal Converting Services, Inc. ("Bengal Converting"), Envista Forensics, LLC. d/b/a AREPA ("AREPA"), Links Debt Fund LLC ("Links"), The Victory Bank ("Victory Bank") and Clarke & Cohen, PC ("Clarke & Cohen") based upon the following:

**Venue and Jurisdiction**

1.      28 U.S.C. §1332 and 28 U.S.C. § 1335 permit Landmark to seek interpleader relief if there is diversity between two or more persons making claims to the interplead funds of $309,338.00, being a payment on a pending Proof of Loss submitted by Landmark's Named Insured, that exposes Landmark to double or multiple liability by those claiming an interest in this payment of Loss as described further herein.

2.      Landmark's Interpleader involves an amount in controversy exceeding the sum specified by 28 U.S.C. §1335.

3.      Landmark is a foreign company with its principal place of business at 945 E. Paces Ferry Rd, Atlanta, GA 30326.

4.      Bengal Converting, Landmark's Named Insured, is a domestic company with its principal place of business at 1155 Main Street, Limerick, PA 19468.

5.      AREPA, who claims to have been assigned Bengal Converting's insurance rights for payment of all or part of the Loss at issue, is a foreign company with its principal place of business at 5565 Glenridge Connector, Suite 900, Atlanta, GA 30342.

6.     Links Debt Fund LLC is a loss payee on the Landmark policy, and it is a domestic company with its principal place of business at 150 N Radnor Chester Road, Suite F-200, Radnor, PA 19087.

7.     The Victory Bank is a loss payee on the Landmark policy, and it is a domestic company with its principal place of business at 548 North Lewis Road, Limerick, PA 19468.

8.     Clarke & Cohen is a domestic public adjusting company or partnership that is believed to have a legal interest in the Loss payments issued by Landmark, and Clarke & Cohen's principal place of business at 510 Belmont Avenue, Bala Cynwyd, PA 19004.

9.     Federal subject matter jurisdiction is proper pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1335 as this interpleader action involves two or more diverse parties claiming legal rights and interest in the interplead funds and Plaintiff is diverse from multiple defendants claiming legal right and interest in the interplead funds.

10.    Venue is proper pursuant to 28 U.S.C. §1397 because Defendant Bengal Converting, the Named Insured on the Landmark Policy, resides in this judicial district.

## Factual Background

11.     Landmark is an insurance carrier who issued a Commercial Property Policy (the "Landmark Policy") for the Named Insured Bengal Converting, which had a $2.5 million combined limits for Building, Machinery & Equipment, Personal Property of Others, and Business Income. The Declarations Pages of the Landmark Policy and its Loss Payee endorsement are attached as **Exhibit A**.

12.     A fire loss occurred on or about July 9, 2022 to property of Bengal Converting and that fire loss damage was assigned by Landmark the claim number 7030171574 (the "Loss"). After advancing funds of $533,296.09 for the Loss, and after consideration of a $25,000 deductible, payment for the Loss was to be made by Landmark to Bengal Converting in the amount $309,338.00, for which A Sworn Statement in Partial Proof of Loss was signed on June 7, 2023 by Bengal Converting, which is attached as **Exhibit B.**

13.     Landmark does not dispute coverage for the amount of Loss claimed in the June 7, 2023 Partial Proof of Loss.

14.     Landmark reserves its rights and defenses as to whether any further payment is owned by Landmark to Bengal Converting for the Loss.

15.     Landmark understands that as part of the restoration services related to the Loss, Bengal Converting engaged Envista Forensics, LLC. d/b/a AREPA

("AREPA") to perform work as a restoration company on property damaged as part of the claimed Loss.

16.     Prior to payment of the Sworn Statement in Partial Proof of Loss that was signed on June 7, 2023 by Bengal Converting, AREPA represented to Landmark that AREPA and Bengal Converting had previously entered into an Emergency Equipment Restoration Agreement (the "Agreement"), by which AREPA for its work for Bengal Converting on property damaged as part of the claimed Loss was assigned Bengal Converting's insurance rights for payment of Loss covered under the Landmark Policy. The Agreement and an image of the Agreement's signature page purportedly executed by Bengal Converting sent to Landmark by AREPA are attached as **Exhibit C.**

17.     Landmark in payment of the executed Sworn Statement in Partial Proof of Loss, therefore, issued on June 9, 2023 its payment Check No. 0040297077 in the amount of $309,338.00 payable to Bengal Converting Services Inc. & Links Debt Fund LLC & The Victory Bank & AREPA (hereinafter the "6.9.23 POL Payment Draft"), attached as **Exhibit D.**

18.     As regards this Loss, Landmark understands that Bengal Converting had hired public adjuster, Richard S. Cohen with Clark Cohen, PA. Mr. Cohen returned the 6.9.23 POL Payment Draft to Landmark's representative Mr. Kraft with

a letter stating that Mr. Cohen, speaking on behalf of Bengal Converting, "does not agree that AREPA should be included on proceeds check" and that a stop payment should be issued on the check and Mr. Cohen wrote that the payment draft should be reissued without AREPA being named on the check that made payment of the June 7, 2023 Sworn Statement in Partial Proof of Loss. The letter from Mr. Cohen and the returned check are attached as **Exhibit E.**

19.     Landmark, on information and belief, understands that Bengal Converting's hired public adjuster, Richard S. Cohen with Clark Cohen, PA, is likely retained by Bengal Converting pursuant to a contingency fee agreement entitling the public adjuster to payment based upon any payment in response to the June 7, 2023 Sworn Statement in Partial Proof of Loss.

20.     Landmark is faced with multiple adverse and mutually exclusive claims over the same insurance proceeds for payment of the June 7, 2023 Sworn Statement in Partial Proof of Loss in the amount of $309,338.00.

21.     Landmark is a neutral party that is indifferent as to whom, in addition to Bengal Converting, has a legal interest in, and right to be named on, a check draft from Landmark in payment of the June 7, 2023 Sworn Statement in Partial Proof of Loss, so long as Landmark ensures payment is made to all parties legally entitled to be named as payees on such Loss payment draft.

22.     Landmark is unsure of its obligations, as multiple parties have colorable and inconsistent claims on Landmark's payment of the June 7, 2023 Sworn Statement in Partial Proof of Loss in the amount of $309,338.00.

23.     Adverse parties have not resolved the dispute between themselves and Landmark has no other means of seeking relief without jeopardizing its own interest and betraying its obligations to one or more parties legally entitled to be named as payees on such a Loss payment draft.

24.     As such, Landmark now petitions this Honorable Court under 28 U.S.C. § 1335 to accept the interplead funds of $309,338.00 and release Landmark from further obligations to any parties legally entitled to be named as payees on the payment draft for the June 7, 2023 Sworn Statement in Partial Proof of Loss in the amount of $309,338.00.

## INTERPLEADER RELIEF REQUESTED

WHEREFORE, pursuant to 28 U.S.C. § 1335, and in the interest of justice and judicial efficiency, Landmark respectfully seeks the following relief by Interpleader:

A.      Landmark seeks relief under 28 U.S.C. § 1335 allowing Landmark to bring this interpleader action as a stakeholder, deposit the amount of $309,338.00 with the court in payment of the June 7, 2023 Sworn

Statement in Partial Proof of Loss, allowing the competing defendants to litigate or otherwise resolve among themselves who is entitled to payment of the interplead funds. *See Metropolitan Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007).

B.  Landmark seeks a preliminary and permanent injunction barring and enjoining the Plaintiffs and Defendants from asserting claims, rights, causes of action, or demand of whatever nature, under the Landmark Policy against Landmark, its parents, subsidiaries, affiliates, insurers, reinsurers, directors, officers, employees, agents, representatives, attorneys, and their respective heirs, executors, administrators, successors and assigns for any payment owed by Landmark for the June 7, 2023 Sworn Statement in Partial Proof of Loss in the amount of $309,338.00.

C.  Landmark seeks a judgment discharging Landmark and any and all of their current and former agents, representatives or related companies (including, but not limited to, subsidiaries and parent companies) from all further liability relating in any way to the claims arising out of the Loss as set forth in the June 7, 2023 Sworn Statement in Partial Proof of Loss in the amount of $309,338.00;

D.     Landmark seeks a judgment discharging Landmark and any and all of their current and former agents, representatives or related companies (including, but not limited to, subsidiaries and parent companies) from further liability under the Landmark Policy for the Loss; and

E.     Any and all further relief that this Honorable Court may deem equitable and just including, but not limited to, attorneys' fees and costs

Respectfully submitted this 6th day of July, 2023.

**McCORMICK & PRIORE, P.C.**

By:  ___/s/ Philip Priore_____
         Philip Priore, Esq. (PA ID #57364)
         Christopher Regan, Esq. (PA ID #329071)
         **McCormick & Priore, P.C.**
         Two Commerce Center, Suite 3810
         2001 Market Street
         Philadelphia, PA 19103
         (T) 215-972-0161 / (F) 215-972-5580
         ppriore@mccormickpriore.com
         cregan@mccormickpriore.com
         Attorneys for Plaintiff,
         Landmark American Insurance Company

# EXHIBIT "A"



## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

**1. POLICY NO.**  LHD922965                                   **EFFECTIVE DATE**  3/5/2022

**2. NAMED INSURED**   Bengal Converting Services, Inc.

**RENEWAL OF**  LHD917094

### 3. DESCRIPTION OF PREMISES                                   ☐"X" If supplemental declarations attached

| Prem. No. | Bldg. No. | Location, Construction and Occupancy |
|---|---|---|
| 1 | 1 | 1155 Main Street, Linfield, PA 19468 / Masonry Non-Combustible / Manufacturing & Office |
| 2 | 1 | 18 Railroad Street, Linfield, PA 19468 / Masonry Non-Combustible / Warehouse |

**COVERAGES PROVIDED -** Insurance at the described premises applies only for coverages for which a limit of insurance is shown.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coinsurance* | Rates |
|---|---|---|---|---|---|---|
| All | All | Building, Machinery & Equipment, Personal Property of Others, Business Income with Extra Expense including "Rental Value" | $2,500,000 Subject to conditions of the Scheduled Limit of Liability, RSG 94060 0515. | Special | NIL | Included |

*IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

**OPTIONAL COVERAGES -** Applicable only when entries are made in the schedule below.

| Prem. No. | Bldg. No. | Agreed Value Expiration Date | Coverage | Amount | Replacement Cost (X) Building | Personal Property | Including "Stock" |
|---|---|---|---|---|---|---|---|
| All | All | | | | X | X | |

| Prem. No. | Bldg. No. | Inflation Guard (Percentage) Building | Personal Property | * Monthly Limit of Indemnity (Fraction) | * Maximum Period of Indemnity (X) | * Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|---|
| N/A | | | | | | |

* APPLIES TO BUSINESS INCOME ONLY

### 4. MORTGAGE HOLDERS AND/OR LOSS PAYEES

| Prem. No. | Bldg. No. | Mortgage Holder and/or Loss Payee Name and Mailing Address |
|---|---|---|
| | | Refer to RSG 94078 0719 |

### 5. DEDUCTIBLE

Please refer to the Deductible & Period of Restoration Endorsement-RSG 94068 *(edition date of form RSG 94068 purposefully omitted in this reference).*

**TOTAL PREMIUM FOR THIS COVERAGE PART**  ➡ $  INCLUDED

### 6. FORMS / ENDORSEMENTS APPLICABLE

SEE SCHEDULE OF POLICY ATTACHMENTS AND FORMS, RSG 94106 1009

THESE DECLARATIONS, WHEN COMBINED WITH THE COMMON POLICY DECLARATIONS, THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright. ISO Commercial Risk Services. Inc., 1984.

RSG 40001 0719

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MORTGAGE HOLDER & LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

| | Name and Address: |
|---|---|
| ☐ Mortgagee ☒ Loss Payee | Links Debt Fund, LLC<br>Radnor Financial<br>150 N Radnor Chester Rd, Suite F-200<br>Radnor, PA 19087 |
| As respects: | As their interest may appear |
| Applicable Clause: | ☐ B.  ☒ C.1.  ☐ C.2.  ☐ C.3.  ☐ C.4. |

| | Name and Address: |
|---|---|
| ☐ Mortgagee ☒ Loss Payee | The Victory Bank<br>548 North Lewis Road<br>Limerick, PA 19468 |
| As respects: | As their interest may appear |
| Applicable Clause: | ☐ B.  ☒ C.1.  ☐ C.2.  ☐ C.3.  ☐ C.4. |

| | Name and Address: |
|---|---|
| ☐ Mortgagee ☐ Loss Payee | |
| As respects: | |
| Applicable Clause: | ☐ B.  ☐ C.1.  ☐ C.2.  ☐ C.3.  ☐ C.4. |

| | Name and Address: |
|---|---|
| ☐ Mortgagee ☐ Loss Payee | |
| As respects: | |
| Applicable Clause: | ☐ B.  ☐ C.1.  ☐ C.2.  ☐ C.3.  ☐ C.4. |

**Policy No.:  LHD922965     Effective:  3/5/2022**

| | Name and Address: |
|---|---|
| ☐ Mortgagee<br><br>☐ Loss Payee | |
| As respects: | |
| Applicable Clause: | ☐ B.   ☐ C.1.   ☐ C.2.   ☐ C.3.   ☐ C.4. |

| | Name and Address: |
|---|---|
| ☐ Mortgagee<br><br>☐ Loss Payee | |
| As respects: | |
| Applicable Clause: | ☐ B.   ☐ C.1.   ☐ C.2.   ☐ C.3.   ☐ C.4. |

| | Name and Address: |
|---|---|
| ☐ Mortgagee<br><br>☐ Loss Payee | |
| As respects: | |
| Applicable Clause: | ☐ B.   ☐ C.1.   ☐ C.2.   ☐ C.3.   ☐ C.4. |

| | Name and Address: |
|---|---|
| ☐ Mortgagee<br><br>☐ Loss Payee | |
| As respects: | |
| Applicable Clause: | ☐ B.   ☐ C.1.   ☐ C.2.   ☐ C.3.   ☐ C.4. |

| | Name and Address: |
|---|---|
| ☐ Mortgagee<br><br>☐ Loss Payee | |
| As respects: | |
| Applicable Clause: | ☐ B.   ☐ C.1.   ☐ C.2.   ☐ C.3.   ☐ C.4. |

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Mortgagee or Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

**B. MORTGAGE HOLDERS**

The following conditions apply in addition to the Common Policy Conditions, Commercial Property Conditions and Commercial Inland Marine Conditions:

**1.** The term Mortgage Holder includes trustee.

**2.** We will pay for covered loss of or damage to buildings or structures to each Mortgage Holder shown in the Schedule above, in their order of precedence, as interests may appear.

**3.** The Mortgage Holder has the right to receive loss payment even if the Mortgage Holder has started foreclosure or similar action on the building or structure.

**4.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the Mortgage Holder will still have the right to receive loss payment if the Mortgage Holder:

   **a.** Pays any premium due under this Coverage Part at our request if you have failed to do so;

   **b.** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **c.** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Mortgage Holder.

All of the terms of this Coverage Part will then apply directly to the Mortgage Holder.

**5.** If we pay the Mortgage Holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   **a.** The Mortgage Holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   **b.** The Mortgage Holder's right to recover the full amount of the Mortgage Holder's claim will not be impaired.

At our option, we may pay to the Mortgage Holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**6.** If we cancel this policy, we will give written notice to the Mortgage Holder at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**7.** If we elect not to renew this policy, we will give written notice to the Mortgage Holder at least 10 days before the expiration date of this policy.

**C.** The following are added as **Loss Payment** Loss Conditions, applicable as indicated in the Schedule above:

   **1. LOSS PAYABLE CLAUSE**

   For Covered Property in which both you and a Loss Payee shown in the Schedule above have an insurable interest, we will:

      **a.** Adjust losses with you; and

      **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

   **2. LENDER'S LOSS PAYABLE CLAUSE**

      **a.** The Loss Payee shown in the Schedule above is a creditor, including a Mortgage Holder or trustee, whose interest in Covered Property is established by such written instruments as:

        **(1)** Warehouse receipts;

        **(2)** A contract for deed;

        **(3)** Bills of lading;

        **(4)** Financing statements; or

        **(5)** Mortgages, deeds of trust, or security agreements.

**b.** For Covered Property in which both you and a Loss Payee have an insurable interest:

    **(1)** We will pay for covered loss or damage to each Loss Payee, in their order of precedence, as interests may appear.

    **(2)** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **(3)** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

        **(a)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

        **(b)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(c)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Part will then apply directly to the Loss Payee.

    **(4)** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

        **(a)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(b)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**c.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**d.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**3. CONTRACT OF SALE CLAUSE**

**a.** The Loss Payee shown in the Schedule above is a person or organization you have entered a contract with for the sale of Covered Property.

**b.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **(1)** Adjust losses with you; and

    **(2)** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**c.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**4. BUILDING OWNER LOSS PAYABLE CLAUSE**

**a.** The Loss Payee shown in the Schedule above is the owner of the described building in which you are a tenant.

**b.** We will adjust losses to the described building with the Loss Payee.  Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**c.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

# EXHIBIT "B"

| 2,500,00.00 | | LHD922965/7030171574 |
|---|---|---|
| AMOUNT OF POLICY AT TIME OF LOSS | **SWORN STATEMENT IN PARTIALPROOF OF LOSS TO THE** | POLICY/CLAIM NUMBER |

| 03/05/22 | | |
|---|---|---|
| ISSUED | | AGENCY AT |
| 03/05/22 | | |
| EXPIRES | | AGENT |

**Landmark American Insurance Company**

of      **Atlanta, GA**

At time of loss,  by the above indicated policy of insurance our insured

**Bengal Converting Services, Inc.**

against loss by    **All Risk**    to the property described under the above policy, according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.

**TIME AND ORIGIN**
A    **Fire**    loss occurred on the    **9th day of July, 2022**
The cause and origin of the said loss were:    **Unknown causse of fire burned paper and caused sprinklers to engage.**

**OCCUPANCY**
The building described, or containing the property described, was occupied at the time of loss as follows, and for no other purpose whatever:    **Manufacturing & Office & Warehouse**

**TITLE AND INTEREST**
At the time of the loss the interest of your insured in the property described therein was:    **OWNER**
No other person had any interest therein or encumbrance thereon, except:

**CHANGES**
Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except:    **None Known**

**TOTAL INSURANCE**
THE TOTAL AMOUNT OF INSURANCE upon the property described by this policy was, at the time of the loss,    **2,500,00.00**    as more particularly specified in the apportionment attached under the policy besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

**VALUE**
THE ACTUAL CASH VALUE OF said property at the time of loss was    **VALUE**

**BUSINESS PERSONAL PROPERTY**    PAYMENT    $

**ADVANCE**    PAYMENT    $

**DEDUCTIBLE**    Less the APPLICABLE DEDUCTIBLE    $

**AMOUNT CLAIMED**    THE AMOUNT CLAIMED under the above numbered policy is    PARTIAL PAYMENTS $    309,338.00

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made.  Any other information that may be required will be furnished and considered a part of this proof.

Pursuant to s.18.P.S s 4117, Pennsylvania Statutes, "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties."

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

Pennsylvania
Montgomery

X _____    Insured

State of
County of

Subscribed and sworn to before me this **7th** day of **June** 20 **23**

_Brett M. Cohen_    Notary Public

| Commonwealth of Pennsylvania - Notary Seal |
|---|
| Brett M. Cohen, Notary Public |
| Montgomery County |
| My commission expires February 27, 2024 |
| Commission number 1364819 |
| Member, Pennsylvania Association of Notaries |

**EXHIBIT "C"**



# EMERGENCY EQUIPMENT RESTORATION AGREEMENT

This Emergency Equipment Restoration Agreement (this "Agreement") is entered into between Envista Forensics, LLC. d/b/a AREPA, with its principal place of business at 5565 Glenridge Connector, Suite 900, Atlanta, Georgia 30342, and **Bengal Converting**, with its principal place of business at **1155 Main Street. Limerick pa. 19468 Limerick, PA 19468** ("Customer").

**WHEREAS,** Customer has requested that AREPA provide, and AREPA has agreed to provide, certain emergency equipment restoration services to Customer in accordance with the terms and conditions set forth in this Agreement;

**NOW THEREFORE,** in consideration of the mutual promises contained herein the parties hereby agree as follows:

**1.**    **Services Provided By AREPA.**  AREPA will perform emergency response services to assess any equipment damage, recommend possible treatments and implement protective or restorative services ("Services") with respect to any such equipment ("Equipment") as requested by Client.

**2.**    **Fees.**  Customer agrees to pay AREPA for all Services rendered and expenses incurred in accordance with the USA Scheduled Charges for Equipment Restoration Services (the "Fee Schedule") attached hereto and incorporated herein by reference.

**3.**    **Invoicing and Payment.**  An invoice for Initial Services will be provided within three (3) days of AREPA being onsite. The initial services invoice will be due upon receipt. An invoice for Services rendered will be produced upon completion of the emergency services with the initial services payment subtracted. The total amount incurred will be due immediately. Any disputed invoice (or portion of any invoice) must be reported to AREPA within fifteen (15) days of receipt for resolution or such invoice shall be deemed to be accurate and payable. If possible, AREPA will provide a full project equipment decontamination agreement, to include estimated cost and timeframe for the project.

**4.**    **Additional Terms and Conditions.**  AREPA and Client further agree to be bound by the Additional Terms and Conditions attached hereto and incorporated herein by reference. This agreement extends the "customer" up to $25,000.00 in credit based upon a satisfactory credit review.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed effective as of the last date shown below.

**AREPA**

By:_____
   Signature of Authorized Representative

Name: Scott Mabie_____

Title:__Director of Operations_____

Date:___July 11, 2022_____

Please contact Alex Mirko, Project Coordinator, with any questions, alex.mirko@arepa.com
Telephone: (847) 715-2751

**Bengal Converting**

By:_____
   Signature of Authorized Representative

Name: _____

Title:_____

Date:_____

Telephone number:_____

Email address:_____



# EMERGENCY EQUIPMENT RESTORATION AGREEMENT

Accounts payable contact name: _____

Accounts payable contact email: _____

Accounts payable contact phone number: _____

## ADDITIONAL TERMS AND CONDITIONS

**1. CUSTOMER RESPONSIBILITIES.**
Customer will (a) provide AREPA with reasonable access to the Equipment in order to enable AREPA to perform the Services in an efficient and cost-effective manner; (b) provide AREPA with all required technical information regarding the Equipment, including, without limitation, all safety precautions necessary or advisable for AREPA to observe in performing the Services; and (c) assist AREPA in coordinating any services that may be required from manufacturers or authorized third party service providers of the Equipment in order to enable AREPA to complete the Services. AREPA will not be responsible for overseeing, supervising or approving the work of anyone other than AREPA's personnel.

**2. Term.** This Agreement will become effective on the last date set forth on the signature page of this Agreement (the "Effective Date") and will continue until terminated in accordance with the provisions of Section 3 (the "Term").

**3. Termination.** This Agreement shall be in full force and effect for the duration of the performance of the Services and will terminate upon the later of (a) the completion of all such Services and delivery of the Certificate of Completion, or (b) receipt of final payment for such Services by Customer. In addition, this Agreement may be terminated by either party upon the occurrence of any material breach by the other party and failure to cure such breach within seven (7) days of receipt of written notice specifying such breach and intent to terminate. All fees for Services rendered and expenses incurred up to the termination date, along with all expenses resulting from the termination, shall be due and payable as of the termination date.

**4. Survival.** The provisions relating to Confidential Information, Indemnification, and Arbitration shall survive the termination of this Agreement in accordance with their terms.

**5. Certificate of Completion.** Following AREPA's completion of the Services, AREPA will deliver to Customer a certificate to be signed by Customer certifying that the Services have been completed with respect to the Equipment identified in such certificate (the "Certificate of Completion"). Customer will promptly provide a copy of the signed Certificate of Completion to AREPA.

**6. Assignment of Insurance.** Customer hereby assigns to AREPA any and all insurance rights, benefits, proceeds and causes of action under any applicable insurance policy which pertain to the Services performed by AREPA pursuant to this Agreement. This assignment of rights, benefits, proceeds and causes of action is given in consideration of AREPA's agreement to perform such Services and is limited to the amount of AREPA's invoices for Services performed and expenses incurred by AREPA. Customer hereby waives its privacy rights and directs its insurer to communicate directly with AREPA and release any and all information requested by it in connection with this assignment. Customer hereby instructs, directs and authorizes its insurer to issue payment for AREPA invoices for said Services directly to AREPA (and made payable solely to AREPA), and Customer shall execute any and all documents or other agreements required by said insurer for making said payments directly and solely to AREPA. Further, Customer hereby appoints AREPA as Customer's attorney in fact to endorse and deposit any payments made by



## EMERGENCY EQUIPMENT RESTORATION AGREEMENT

any insurer for such Services which may include Customer's name as co-payee. Further, if any such payment is made solely to Customer, Customer shall immediately notify AREPA and tender any such check or payment to AREPA within five (5) business days.

**7. Independent Contractor Status**. AREPA is an independent contractor of Customer for all purposes related to this Agreement. This Agreement will not be deemed to create an employment, partnership, joint venture or agency relationship between the parties. AREPA will be solely responsible for the payment of all compensation and employee benefits applicable to its personnel.

**8. Confidential Information**. Neither AREPA nor Customer shall release any information provided to the other which has been explicitly represented to be proprietary or confidential without written permission. This provision shall be in full force and effect for two (2) years following the date of termination of this Agreement.

**9. Warranty**. AREPA warrants that it will properly handle the Equipment without causing additional damage to such Equipment.

THIS WARRANTY AND THE REMEDIES SET FORTH HEREIN ARE EXCLUSIVE AND IN LIEU OF ALL OTHER REPRESENTATIONS, WARRANTIES AND REMEDIES, BOTH WRITTEN AND ORAL, EXPRESS AND IMPLIED. AREPA SPECIFICALLY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES, INCLUDING, WITHOUT LIMITATION, ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR USE. NO PERSON OR ENTITY IS AUTHORIZED TO GIVE ANY OTHER REPRESENTATION, WARRANTY OR REMEDY ON BEHALF OF AREPA, OR TO ASSUME ANY OTHER LIABILITY ON AREPA'S BEHALF.

**10. LIMITATION OF LIABILITY AND DAMAGES**. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, AREPA SHALL NOT UNDER ANY CIRCUMSTANCE BE LIABLE FOR ANY DAMAGE CAUSED TO THE EQUIPMENT BY THE LOSS EVENT, ANY DOWNTIME, LOSS OF USE, LOST REVENUES OR PROFITS, EXPENSES OF TRAVEL OR LABOR RELATING TO THE REMOVAL, REPLACEMENT OR INSTALLATION OF EQUIPMENT, EXPENSES RELATING TO OR DAMAGES OCCURING DURING OR DUE TO THE SHIPMENT OF EQUIPMENT TO OR FROM AREPA'S DESIGNATED FACILITY, ANY DAMAGES OR EXPENSES DIRECTLY OR INDIRECTLY CAUSED BY ANY THIRD PARTY'S ACTS OR OMISSIONS, INDIRECT, CONSEQUENTIAL, INCIDENTAL, CONTINGENT OR SPECIAL DAMAGES, WHETHER ARISING IN CONTRACT, IN TORT OR UNDER STATUTE, OR ANY OTHER DAMAGES OR EXPENSES NOT AGREED UPON IN WRITING BY AREPA, EVEN IF AREPA HAS BEEN ADVISED OF THE POTENTIAL FOR ANY SUCH DAMAGES OR EXPENSES. IN NO EVENT SHALL AREPA'S TOTAL LIABILITY EXCEED THE SUM PAID BY CUSTOMER FOR THE SERVICES PROVIDED PURSUANT TO THIS AGREEMENT.

**11. Indemnification**. Each party (as such, the "Indemnitor") agrees to hold the other party (as such, the "Indemnitee"), and the Indemnitee's directors, officers, agents, and employees, harmless from and against any and all liability, claims, suits, loss, damages, costs, and expenses, including but not limited to attorney's fees and court costs ("Damages"), to the extent arising or resulting solely from any negligent acts, errors, omissions, or willful misconduct of the Indemnitor in connection with its performance of (or failure to perform) its services and duties under this Agreement.

**12. Remedies for Customer's Failure to Pay**. All invoiced charges for Services which are not paid on a timely basis will accrue interest at the rate of 1.5% per month. AREPA shall have the right to suspend or terminate Services if Customer fails to make full and timely payment of any invoiced charge, without prejudice to AREPA's other rights or remedies. In the event that AREPA initiates legal action to enforce its



## EMERGENCY EQUIPMENT RESTORATION AGREEMENT

rights under this Agreement, AREPA will be entitled to the reimbursement by Customer of all reasonable attorneys' fees, court costs and other expenses incurred therein by AREPA.

**13. Notices.** All notices required under this Agreement must be in writing and delivered to the other party by overnight delivery service or certified mail, postage prepaid, return receipt requested. Any notice sent by overnight delivery service will be deemed delivered on the next business day following its date of dispatch, and any such notice sent by certified mail will be deemed delivered three (3) days after being deposited in a U.S. Postal Service depository.

**14. Interpretation; Legal Effect.** This Agreement will be interpreted and enforced in accordance with the laws of the State of Georgia, without regard to its rules governing choice of laws. The invalidity of any provision of this Agreement will not affect the remainder of that provision or any other provision of this Agreement. The waiver by either Party of any default under this Agreement will not be deemed a waiver of any other default. This Agreement will inure to the benefit of and be binding upon each party and its respective successors and assigns.

**15. Arbitration** - All disputes, claims, or other matters in question between AREPA and Customer arising out of, or relating to, this Agreement or the breach thereof, shall be decided by arbitration in accordance with the Rules of the American Arbitration Association then existing and the Federal Rules of Civil Procedure regarding discovery, unless the parties mutually agree otherwise. The foregoing agreement to arbitrate and any other agreement to arbitrate with an additional person or persons duly consented to by AREPA and

Customer shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. Notice of the demand for arbitration shall be filed in writing with the other party and with the American Arbitration Association. The demand for arbitration shall be made within a reasonable time after the dispute, claim or other matter in question has arisen, and in no event shall the demand be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations. The location for the arbitration shall be Atlanta, Georgia.

**16. Execution.** This Agreement may be executed by email or facsimile transmission, and an emailed or faxed signature will be deemed an original signature for all purposes relating to this Agreement.

**17. Entire Agreement.** This Agreement, which includes each of its Exhibits, the Fee Schedule, and any Certificate of Completion issued by AREPA in connection with this Agreement, constitutes the entire agreement of the parties and supersedes all prior written and oral communications, proposals, negotiations, representations, warranties, understandings and agreements between the parties with respect to the subject matter hereof. This Agreement may not be amended or rescinded except by a written instrument signed by an authorized representative of each party. No term or condition contained in any purchase order, order acknowledgement or like document shall be binding upon the other party, regardless of whether such document is acknowledged by the other party.

 **AREPA** 2022 USA SCHEDULED CHARGES EQUIPMENT RESTORATION SERVICES

## PERSONNEL PROJECT RATES

| | |
|---|---|
| Project Manager | $130.00 / hr |
| Rope Access | $125.00 / hr |
| Team | Technical Lead | $120.00 / hr |
| Specialist | $110.00 / hr |
| Project Coordinator | $110.00 / hr |
| Health & Safety Officer | $95.00 / hr |
| Specialist Travel Time | $85.00 / hr |
| Restoration Supervisor | $75.00 / hr |
| Project Auditor | $65.00 / hr |
| Field Operations | $65.00 / hr |
| Resource | Supply Coordinator | $65.00 / hr |
| Skilled Contract Labor | $50.00 / hr |
| Management of Customer Labor Force - per hour / per person | $6.50 |

## PERSONNEL PROJECT OVERTIME

| | |
|---|---|
| Emergency services between 6 PM & 7 AM | 1.5 x base rate |
| Regular Overtime (over 8 hours per day) | 1.5 x base rate |
| Saturdays & Sundays | 1.5 x base rate |
| Holidays | 2.0 x base rate |

## SCHEDULE FOR PROJECT INVOICING

When scheduling projects, one (1) day equates to ten (10) consecutive labor hours. Eight (8) hours at regular time, independent of the time of day, and one and one half (1.5) hours at overtime as noted above. Two (2) fifteen (15) minute breaks are billed as part of the day. A half (1/2) hour lunch break will not be billed. AREPA bills for offsite project coordination time, OEM warranty & repair facilitation, daily report writing, and inventory update. Standard rates do not apply should prevailing wages need to be paid.

**TRAVEL TIME:**　　Invoiced portal-to-portal.
1. Portal during a project - Hotel housing the crew
2. Portal for site inspections / consulting matters - AREPA's office
3. International team members will be considered as needed.

**JOB EXPENSES:**　　Materials expended and equipment usage required on a project.
1. Per Diem charged at the rate of $64.00 per day, per person, includes meals and incidentals.
2. Expenses will be subject to a 10% markup.
3. Use of company vehicles at $ 1.00 per mile.

**MOBILIZATION FEE:**　　50% of project cost will be required prior to deployment. A Dun & Bradstreet composite credit appraisal will be accessed on all major projects.

## CONSULTING / SITE INSPECTIONS FLAT RATE

| | | | | |
|---|---|---|---|---|
| Consulting / Site Inspections Services | | | | $175.00 / hr |
| Project Scope & Logistics Specialist | | | | $175.00 / hr |
| Executive Director | | Standard Rate $290.00 / hr | Legal Rate | $340.00 / hr |

On flat rate consulting, legal, and site inspection assignments, site time and travel time are invoiced at the same rate. Time billing is tracked in 15-minute increments and no over time or double time rates apply. The personal vehicle mileage rate is based on the standard IRS reimbursement allowance.



A Division of Envista Forensics, LLC　　　　　　　　　　© AREPA 2022

**SAFETY TRAINING**
Training, medical, or certification expenses that are specifically required by the customer and/or their environmental, health, and safety department, will be invoiced and subject to a 10% markup. Actual time at the positions applicable hourly rate.

| WIPE SAMPLE ANALYSIS: | Standard | Rush Job |
|---|---|---|
| • IPC panel | $175.00/sample | $350.00/sample |

**PREVAILING RATE**
Prevailing rates will be paid on all applicable jobs that fall under the (Davis Bacon Act) Prevailing Rate Wage. Rates will be obtained from the state where work is being performed. THE CUSTOMER will be responsible for notifying AREPA if prevailing rates apply. AREPA will adjust rates as necessary.

**COLLECTIVE BARGINING**
To the extent the work under a particular contract is subject to Federal and State minimum wage or hour laws or collective bargaining agreements which modify AREPA's standard rates and practices, adjustments shall be made to the hourly rate and other labor provision as necessary.

**PROJECT DELAY**
When circumstances beyond our control require personnel to be delayed from beginning work, the standard rate / hour will be charged per labor category, per person delayed.

**MANAGEMENT OF CUSTOMER LABOR**
The Management of Customer Labor force line is utilized when AREPA is managing the customer's labor force. The customer is responsible for paying the wages, associated taxes, benefits and insurance for their own employees.

**CATASTROPHE CONSIDERATIONS**
In the event of a large scale regional event which prevents the use of traditional hotel accommodations, an allowance may be calculated to reflect the necessary alternatives such as travel trailers, mobile housing units, or man camps.

**GENERAL CONSIDERATIONS**
Based upon market conditions and laws in certain geographic locations such as; New York City (including all boroughs), Alaska, Hawaii, and parts of California, AREPA reserves the right to revise all scheduled rates in those areas. Rates would only be considered prior to signing a work order.

2022 USA Scheduled Charges Equipment Restoration Services

| Consumables | Unit | | Cost |
|---|---|---|---|
| Cotton Swabs | 50 / Bag | | $ 33.00 |
| Pre-filter 500 cfm scrubber | Each | | $ 7.74 |
| Desiccant Bags | Per Bag | | $ 0.34 |
| Duct Tape 1 | Per Roll | | $ 7.50 |
| Dust Mask | Each | | $ 1.63 |
| Foam Swabs | 50 / Bag | | $ 33.56 |
| Garbage Bag | Each | | $ 0.65 |
| Latex Gloves Large | Box | | $ 16.25 |
| latex Gloves Extra Large | Box | | $ 16.25 |
| Nitrile Gloves Large | Box | | $ 21.25 |
| Nitrile Gloves Extra Large | Box | | $ 21.25 |
| Lens Paper | Box | | $ 6.69 |
| Visquine Sheeting (per 10x25 ft 6 mil roll) | | | $ 36.23 |
| Carpet Cover | 2'x200' | | $ 62.50 |
| Scotch Brites White | Box | | $ 32.50 |
| Scotch Brites Green | Box | | $ 32.50 |
| Scotch Brites Tan | Box | | $ 87.50 |
| Wipes | Box | | $ 14.38 |
| VPCI Emitters | Each | | $ 15.00 |
| VCI Stretch Wrap | 18" X 1,500' | | $ 83.75 |
| Wire Brushes | Each | | $ 2.28 |
| Brass Brushes | Each | | $ 4.06 |
| Paint Scrappers | Each | | $ 3.71 |
| Plastic Scrub Brushes | Each | | $ 5.63 |
| Tie Wrap | Each | | $ 0.13 |
| Tyvek Suits Large | Each | | $ 13.75 |
| Tyvek Suits X Large | Each | | $ 13.75 |
| Tyvek Suits XX Large | Each | | $ 18.75 |
| Brady Labels | Each | | $ 2.35 |
| Microfiber towels | Each | | $ 3.64 |
| Respirator Filters | Each | | $ 31.25 |
| Terry Towels | Case | | $ 120.00 |
| Reusable Consumables | Unit | | Cost |
| Brushes | Each | | $ 1.50 |
| Cotton Gloves | Per Pair | | $ 1.66 |
| Bent long handled brushes | Each | | $ 11.25 |
| Safety Glasses | Each | | $ 5.00 |
| Parts cleaning brushes | Each | | $ 10.00 |
| Heavy duty gloves | Per Pair | | $ 8.75 |
| Respirators half mask | Each | | $ 35.00 |
| Respirators full mask | Each | | $ 148.75 |
| Spray bottles | Each | | $ 3.69 |
| Bug Sprayer | Each | | $ 24.96 |

© AREPA 2022

2022 USA Scheduled Charges Equipment Restoration Services

| Chemicals | Unit | | Cost |
|---|---|---|---|
| Chemtronics Electronic cleaner | Per Can | | $ 22.50 |
| Glowsan Degreaser | Per Gallon | | $ 28.75 |
| Ironclad Filming Agent Corrosion Preventive | Per Gallon | | $ 17.39 |
| ISO | Per Gallon | | $ 100.00 |
| Lexor Technical Cleaner | Per Gallon | | $ 36.15 |
| Parazine General Cleaner | Per Gallon | | $ 9.98 |
| Nautilus | Per Gallon | | $ 183.13 |
| Tri-Flow Lubricant | Per Gallon | | $ 125.96 |
| WD-40 | Per Gallon | | $ 29.79 |
| Zep A-Lume Aluminum Cleaner | Per Gallon | | $ 24.38 |
| Pelox | Per Gallon | | $ 129.69 |
| EvapoRust | Per Gallon | | $ 26.85 |
| LPS 1 Lubricant | Per Gallon | | $ 79.01 |
| LPS 2 Lubricant | Per Gallon | | $ 78.75 |
| Smoke Screen Deodorizer | Per Gallon | | $ 62.70 |
| Shockwave Disinfectant | Per Gallon | | $ 61.25 |
| D-5640NS Cleaner Degreaser | Per Can | | $ 20.81 |
| D-5015NS Corrosion Preventive | Per Can | | $ 20.81 |

| Kits | | | |
|---|---|---|---|
| **Compressor Kit** | **Unit** | **Day** | **Week** |
| Air Compressor | Each | $ 30.00 | $ 150.00 |
| Air Hose | Each | $ 5.00 | $ 25.00 |
| Air Dryer | Each | $ 40.00 | $ 200.00 |
| **Electrical Kit** | **Unit** | **Day** | **Week** |
| 50' Extention Cords | Each | $ 5.00 | $ 25.00 |
| GFCI Power Cord | Each | $ 3.00 | $ 15.00 |
| **ESD Kit** | **Unit** | **Day** | **Week** |
| ESD Table Mats | Each | $ 10.00 | $ 50.00 |
| WSD Floor Mats | Each | $ 10.00 | $ 50.00 |
| ESD Wrist Straps / Heel Straps | Set | $ 1.00 | |
| ESD Air Gun | Each | $ 76.00 | $ 380.00 |
| Circuit Card Holders | Each | $ 3.00 | $ 15.00 |
| ESD Bags (determined by size and quantity) | | | |
| **H20 Kit** | **Unit** | **Day** | **Week** |
| Small DI-45 | Each | $ 20.00 | $ 100.00 |
| 50 Ft. Water Hose | Each | $ 4.00 | $ 20.00 |
| Washer Hoses | Each | $ 1.00 | $ 5.00 |
| **Heater Kit** | **Unit** | **Day** | **Week** |
| Portable Heaters | Each | $ 30.00 | $ 150.00 |
| **Master Tool Kit** | **Unit** | **Day** | **Week** |
| Entire Kit | Each | $ 55.00 | $ 275.00 |
| **PM Kit** | **Unit** | **Day** | **Week** |
| Entire Kit | Each | $ 12.50 | $ 62.50 |

© AREPA 2022

2022 USA Scheduled Charges Equipment Restoration Services

| Lubrication Kit | Unit | | Day | Week |
|---|---|---|---|---|
| Entire Kit | Each | | $ 2.50 | $ 12.50 |
| **Equipment** | **Unit** | | **Day** | **Week** |
| Lock Out Tag Out | Set of 8 | | $ 60.00 | $ 300.00 |
| Spider Box | Each | | $ 12.50 | $ 62.50 |
| Carts | Each | | $ 34.50 | $ 172.50 |
| Carts ESD | Each | | $ 50.00 | $ 250.00 |
| Drying Oven | Each | | $ 527.20 | $ 2,636.00 |
| Generator | Each | | $ 69.90 | $ 349.50 |
| Blue HEPA air scrubber | Each | | $ 120.00 | $ 600.00 |
| HEPA Clean Air Machine | Each | | $ 112.76 | $ 563.80 |
| HEPA / Toner Vac | Each | | $ 43.55 | $ 217.75 |
| Ladder Step or Extension | Each | | $ 3.00 | $ 15.00 |
| Large Compressor | Each | | $ 29.90 | $ 149.50 |
| Lights | Each | | $ 15.00 | $ 75.00 |
| Portable Drying Chambers | Each | | $ 50.00 | $ 250.00 |
| Portable Spray System / Odell | Each | | $ 297.00 | $ 1,485.00 |
| Pressure Washer | Each | | $ 10.00 | $ 50.00 |
| Shelving Units | Each | | $ 5.50 | $ 27.50 |
| Spray Booths/Conn/Hoses | Each | | $ 437.50 | $ 2,187.50 |
| Tables | Each | | $ 9.00 | $ 45.00 |
| Chairs | Each | | $ 2.00 | $ 10.00 |
| Wet / Dry Vac | Each | | $ 8.00 | $ 40.00 |
| HEPA Vac Nilfisk 5 gallon | Each | | $ 63.00 | $ 315.00 |
| Nilfisk brush attachment | Each | | $ 6.00 | $ 30.00 |
| HEPA /Wet/Dry Nilfisk 12 gallon | Each | | $ 91.50 | $ 457.50 |
| SCM | Each | | $ 480.00 | $ 2,400.00 |
| Vacuum Oven Chamber | Each | | $ 900.00 | $ 4,500.00 |
| Hydroxyl Generator | Each | | $ 180.00 | $ 900.00 |
| Lock Out Tag Out Kit | Set of 8 | | $ 30.00 | $ 150.00 |
| Spider Box | Each | | $ 25.00 | $ 125.00 |
| Ozone Generator | Each | | $ 20.00 | $ 100.00 |
| Injectors (spray guns) | Each | | $ 15.00 | $ 75.00 |
| Canopy Tent (10' x 10') | Each | | $ 11.00 | $ 55.00 |
| Canopy Tent (8' x 8') | Each | | $ 7.00 | $ 35.00 |
| Megger | Each | | $ 25.00 | $ 125.00 |
| Self Retracting Lifeline | Each | | $ 19.50 | $ 97.50 |
| Retaining Ring Plier Kit | Each | | $ 20.00 | $ 100.00 |
| Traffic Cones (12") | Each | | $ 0.80 | $ 4.00 |
| Bearing Fitting Kit | Each | | $ 119.60 | $ 598.00 |



2022 USA Scheduled Charges Equipment Restoration Services

| Shipping Supplies | Unit | | Day | Week |
|---|---|---|---|---|
| Anti-static Stretch Wrap | Yard | | $ 1.25 | $ - |
| Boxes 18"x18"x24" | Box | | $ 3.88 | $ - |
| Bubble Wrap 12" | Yard | | $ 1.25 | $ - |
| Bubble Wrap 12" (anti-static) | Yard | | $ 1.88 | $ - |
| Packing Tape | Roll | | $ 5.00 | $ - |
| Shipping Blankets | Each | | $ 30.00 | $ 150.00 |

**MATERIALS & EQUIPMENT CONSIDERATIONS**

1. The rate schedule lists the most commonly used items. AREPA reserves the right to add to the materials / consumables schedule during the course of the work.
2. During the course of work, AREPA may find it necessary to purchase equipment and/or supplies not scheduled above. In those situations, the schedule shall be an acceptable industry daily rental rate determined by AREPA for the equipment, and the cost of supplies plus 20%.
3. If any company owned, leased or rented asset is damaged or rendered unfit for use by the actions or inactions of the customer, its agents or representatives, the customer if negligent, shall be responsible for replacing such asset at their expense.



# EMERGENCY EQUIPMENT RESTORATION AGREEMENT

This Emergency Equipment Restoration Agreement (this "Agreement") is entered into between Envista Forensics, LLC. d/b/a AREPA, with its principal place of business at 5565 Glenridge Connector, Suite 900, Atlanta, Georgia 30342, and **Bengal Converting**, with its principal place of business at 1155 **Main Street, Limerick pa. 19468 Limerick, PA 19468** ("Customer").

**WHEREAS,** Customer has requested that AREPA provide, and AREPA has agreed to provide, certain emergency equipment restoration services to Customer in accordance with the terms and conditions set forth in this Agreement;

**NOW THEREFORE,** in consideration of the mutual promises contained herein the parties hereby agree as follows:

1. **Services Provided By AREPA.** AREPA will perform emergency response services to assess any equipment damage, recommend possible treatments and implement protective or restorative services ("Services") with respect to any such equipment ("Equipment") as requested by Client.

2. **Fees.** Customer agrees to pay AREPA for all Services rendered and expenses incurred in accordance with the USA Scheduled Charges for Equipment Restoration Services (the "Fee Schedule") attached hereto and incorporated herein by reference.

3. **Invoicing and Payment.** An invoice for Initial Services will be provided within three (3) days of AREPA being onsite. The initial services invoice will be due upon receipt. An invoice for Services rendered will be produced upon completion of the emergency services with the initial services payment subtracted. The total amount incurred will be due immediately. Any disputed invoice (or portion of any invoice) must be reported to AREPA within fifteen (15) days of receipt for resolution or such invoice shall be deemed to be accurate and payable. If possible, AREPA will provide a full project equipment decontamination agreement, to include estimated cost and timeframe for the project.

4. **Additional Terms and Conditions.** AREPA and Client further agree to be bound by the Additional Terms and Conditions attached hereto and incorporated herein by reference. This agreement extends the "customer" up to $25,000.00 in credit based upon a satisfactory credit review.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed effective as of the last date shown below.

AREPA

By:_____
Signature of Authorized Representative

Name: Scott Mabie

Title: Director of Operations

Date: July 11, 2022

Please contact Alex Mirko, Project Coordinator, with any questions, alex.mirko@arepa.com
Telephone: (847) 715-2751

Bengal Converting

By:_____
Signature of Authorized Representative

Name: _Scott. Korey_

Title: _PRESIDENT / CEO_

Date: _7/11/2022_

Telephone number: _610 787-0907_

Email address: _SKORN @ BENGALGRP. COM_

Comprehensive Recovery | Innovative Solutions

© AREPA 2020   1

**EXHIBIT "D"**

FM #8009060 092010

Landmark American Insurance Company
945 East Paces Ferry Road
Suite 1800
Atlanta, GA 30326-1160

TO:     **BENGAL CONVERTING SERVICES, INC  & LINKS DEBT FUND, LLC &**
        **THE VICTORY BANK & AREPABRETT M  COHEN**
        **510 BELMONT AVENUE**
        **BALA CYNWYD, PA 19004**

The attached payment is for the following claim(s):

| CLAIM NUMBER | ACC/SAIL DATE | INSURED/CLAIMANT/CONVEYANCE | AMOUNT |
|---|---|---|---|
| 7030171574 | 07/09/2022 | Bengal Converting Services Inc / Linfield PA | $    309,338.00 |

| COMPANY SYMBOL | L | POLICY NUMBER | HD922965 | |
|---|---|---|---|---|
| PAYMENT NUMBER | 676530 | CLAIM NUMBER | 7030171574 00 | 97638 / 30468 |

ATTN:   Kurt Kraft                     404-231-2366
PLEASE REFER TO THE CLAIM NUMBER SHOWN ABOVE ON ALL CORRESPONDENCE OR INQUIRIES

ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICANT FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION FINES OR CONFINEMENT IN PRISON, OR A COMBINATION THERE OF.

**(DETACH LOWER PORTION AT PERFORATION)**

FOR SECURITY PURPOSES, THE BACK OF THIS DOCUMENT CONTAINS AN ARTIFICIAL WATERMARK

RSUI   Landmark American Insurance Company
       945 East Paces Ferry Road          Bank of America, N.A.     64-1278/611     CHECK NUMBER
       Suite 1800                         Atlanta, GA                               0040297077
       Atlanta, GA 30326-1160

                                                                                   CHECK DATE
                                                                                   06/09/2023

                                                                                   $*** 309,338.00

PAY     Three Hundred Nine Thousand Three Hundred Thirty Eight And 0/100 Dollars

TO THE
ORDER OF    BENGAL CONVERTING SERVICES INC & LINKS DEBT FUND LLC &
            THE VICTORY BANK & AREPA

IN PAYMENT FOR: Additional Payment BPP 7/9/2022

                                                          *Leonard C. Sjostrom*
                                                          AUTHORIZED SIGNATURE
                                                          SIGNATURE HAS A BLUE-GREEN BACKGROUND · BORDER CONTAINS MICROPRINTING  MP

⑈004029707⑈ ⑈061127882⑈ 3299119695⑈

# EXHIBIT "E"

FM #8009080 092010
8009080

Landmark American Insurance Company
945 East Paces Ferry Road
Suite 1800
Atlanta, GA 30326-1160

**TO:**   **BENGAL CONVERTING SERVICES, INC  & LINKS DEBT FUND, LLC &**
**THE VICTORY BANK & AREPABRETT M  COHEN** ,
**510 BELMONT AVENUE**
**BALA CYNWYD, PA 19004**

The attached payment is for the following claim(s):

| CLAIM NUMBER | ACC/SAIL DATE | INSURED/CLAIMANT/CONVEYANCE | AMOUNT |
|---|---|---|---|
| 7030171574 | 07/09/2022 | Bengal Converting Services Inc / Linfield PA | $      309,338.00 |

| COMPANY SYMBOL | L | | POLICY NUMBER | HD922965 | |
|---|---|---|---|---|---|
| PAYMENT NUMBER | 676530 | | CLAIM NUMBER | 7030171574 00 | 97638 / 30468 |

ATTN:   Kurt Kraft                         404-231-2366
PLEASE REFER TO THE CLAIM NUMBER SHOWN ABOVE ON ALL CORRESPONDENCE OR INQUIRIES

ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY
PRESENTS FALSE INFORMATION IN AN APPLICANT FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION FINES OR
CONFINEMENT IN PRISON, OR A COMBINATION THERE OF.

**(DETACH LOWER PORTION AT PERFORATION)**

092010

FOR SECURITY PURPOSES, THE BACK OF THIS DOCUMENT CONTAINS AN ARTIFICIAL WATERMARK

RSUI  Landmark American Insurance Company        Bank of America, N.A.    64-1278/611    **CHECK NUMBER**
945 East Paces Ferry Road                              Atlanta, GA                            **0040297077**
Suite 1800
Atlanta, GA 30326-1160                                                                       CHECK DATE
                                                                                             **06/09/2023**

                                                                                             $*** 309,338.00

**PAY**        Three Hundred Nine Thousand Three Hundred Thirty Eight And 0/100 Dollars

TO THE
ORDER OF        BENGAL CONVERTING SERVICES INC & LINKS DEBT FUND LLC &
                THE VICTORY BANK & AREPA

IN PAYMENT FOR: Additional Payment BPP 7/9/2022                    Leonard C. Sjostrom
                                                                   **AUTHORIZED SIGNATURE**
                                                SIGNATURE HAS A BLUE-GREEN BACKGROUND • BORDER CONTAINS MICROPRINTING  MP

⑆0040297077⑆ ⑈061112788⑈ 3299119695⑈



# CLARKE COHEN

**Property Loss Consultants**

*Serving the Public
Since 1921*

June 20, 2023

Kurt Kraft
945 East Paces Ferry Road
Suite 1800
Atlanta, GA 30326

      RE:  Bengal Converting Services, Inc
             1155 Main Street
             Linfield, PA 19468

Dear Mr. Kraft,

We are in receipt of Landmark America's check #0040297077 made payable to Bengal Converting Services, Inc & Links Debt Fund LLC & The Victory Bank & AREPA in the amount of $309,338.00 representing an additional BPP Payment

As discussed today as well as last week with Geoff Kilcollum, the insured is not in agreement with the invoice and contract presented by AREPA and does not agree that AREPA should be included on any proceeds check.

Please have the insurance carrier stop payment on this check and reissue as per previous payments, without AREPA named.

Thank you in advance for your cooperation in this matter

Sincerely,



Richard S. Cohen



510 Belmont Avenue • Bala Cynwyd, Pa 19004
610-668-0144 • 800-487-5897 toll free • 610-668-0140 fax
www.clarkeandcohen.com



**After printing this label**:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.