**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION**

LANDMARK AMERICAN INSURANCE )
COMPANY )
                                      )
      Plaintiff, )
                                        )      CIVIL ACTION FILE
v. )      NO. 2:23-cv-02576-JHS
                                        )
BENGAL CONVERTING SERVICES, INC.; )
ENVISTA FORENSICS, LLC d/b/a AREPA; )
LINKS DEBT FUND, LLC; THE VICTORY )
BANK; and COHEN & CLARK, P.C., )
                                        )
      Defendants. )
_____)

## MOTION TO STAY PROCEEDINGS BY ENVISTA FORENSICS, LLC, D/B/A AREPA

      Defendant, Envista Forensics, LLC, d/b/a AREPA ("AREPA"), pursuant to 9 U.S.C. § 3, moves to stay all further proceedings in this lawsuit pending the adjudication of a previously filed arbitration action between Bengal Converting Services, Inc. ("Bengal") and AREPA. The issues in the pending arbitration proceedings are inextricably intertwined with the issues involved in the above-referenced action. For the reasons provided herein, AREPA respectfully submits that its motion should be granted and this action should be stayed pending the resolution of the arbitration.

### BACKGROUND

      Landmark filed the above-referenced action to determine who is entitled to the amount of $309,338 that has been entered into this Court's registry (the "Interpleaded Funds"). On or about July 9, 2022, Bengal experienced a fire at its Linfield, Pennsylvania, facility, severely damaging several of Bengal's paper converting machines and equipment (the "Loss"). Two days later, on July 11, 2022, Bengal retained AREPA to decontaminate and restore the equipment damaged by the Loss and the parties entered into a certain Emergency Equipment Restoration Agreement (the

"Agreement") dated July 11, 2022. The Agreement requires Bengal and AREPA to resolve any

disputes between them through arbitration. Specifically, Section 14 of the Agreement's Additional

Terms and Conditions states as follows:

> **Arbitration** – All disputes, claims, or other matters in question between AREPA
> and [Bengal] arising out of, or relating to, this Agreement or the breach thereof,
> shall be decided by arbitration in accordance with the Rules of the American
> Arbitration Association then existing and the Federal Rules of Civil Procedure
> regarding discovery, unless the parties mutually agree otherwise. [. . .] The location
> for the arbitration shall be Atlanta, Georgia.

(*See* Agreement, § 14, attached hereto as Exhibit 1.) The Agreement provides that Bengal assigns

to AREPA all insurance proceeds related to AREPA's services regarding the Loss. Section 6 of

the Agreement's Additional Terms and Conditions states as follows:

> **Assignment of Insurance.** [Bengal] hereby assigns to AREPA any and all
> insurance rights, benefits, proceeds and causes of action under any applicable
> insurance policy which pertain to the Services performed by AREPA pursuant to
> this Agreement. This assignment of rights, benefits, proceeds and causes of action
> is given in consideration of AREPA's agreement to perform such Services and is
> limited to the amount of AREPA's invoices for Services performed and expenses
> incurred by AREPA. [Bengal] hereby instructs, directs and authorizes its insurer to
> issue payment for AREPA invoices for said Services directly to AREPA (and made
> payable solely to AREPA), and [Bengal] shall execute any and all documents or
> other agreements required by said insurer for making said payments directly and
> solely to AREPA. [. . .] Further, if any such payment is made solely to [Bengal],
> [Bengal] shall immediately notify AREPA and tender any such check or payment
> to AREPA within five (5) business days.

(Ex. 1, § 6.) AREPA performed the contracted-for services at Bengal's facility and issued two

invoices to Bengal totaling $717,136.04. To date, Bengal has failed to pay any amount owed to

AREPA pursuant to the Agreement.

On June 19, 2023, AREPA submitted its Demand for Arbitration and Statement of Claim

against Bengal to arbitration (the "Arbitration Action"). (*See* AREPA's Statement of Claim,

attached hereto as Exhibit 2.) AREPA is entitled to the principal amount of $717,136.04, including

interest, attorneys' fees, and arbitration costs. (*See id.*) To date, the parties have selected an

arbitrator, and the second preliminary hearing is set to take place on October 16, 2023, to address the discovery schedule for the Arbitration Action. (*See* Arbitrator Order #1, attached hereto as Exhibit 3.)

Landmark filed the above-referenced action almost three weeks later, on July 6, 2023. Landmark's basis for filing the above-referenced action is Bengal's demand that the check for the Interpleaded Funds "be reissued without AREPA being named on the check." (Interpleader Complaint, ¶ 18). In other words, if Bengal did not demand that AREPA's name be removed from the check for the Interpleaded Funds, then Landmark would not have filed the above-referenced action. Bengal's alleged refusal to pay AREPA in the above-referenced action is a continuation of Bengal's refusal to pay AREPA, which is the subject of the Arbitration Action.

## **ARGUMENT**

### A.    The Federal Arbitration Act Applies to the Arbitration Action.

The Federal Arbitration Act ("FAA") applies to any "contract evidencing a transaction involving commerce" that contains an arbitration provision. 9 U.S.C. § 2. In fact, Section 2 of the FAA "declare[s] a national policy favoring arbitration" of claims that parties contract to settle in that manner. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). That national policy "appli[es] in state as well as federal courts" and "foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements." *Id.* at 15.

Here, the parties expressly agreed to arbitrate any and all disputes arising out of the Agreement. (*See* Aff. of Tom Bonse at ¶ 3, attached hereto as Exhibit 4; Ex. 1, § 14.) Further, the fact that AREPA is a commercially contracting entity from Georgia, that Bengal's facility is located in Pennsylvania, and that materials and supplies to be used for AREPA's services were obtained both inside and outside of those states. (Ex. 4 at ¶¶ 4–6.)

Moreover, in the context of disputes governed by the FAA, courts are instructed to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985). Any doubts as to arbitrability should be resolved "in favor of arbitration." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also Moses H. Cone Mem'l Hosp. v. Mercury Cons. Corp.*, 460 U.S. 1, 24 (1983) (finding that Congress declared a "liberal policy favoring arbitration agreements"); *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 290 (2002) (same).[1]

Indeed, the FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Federal courts are obligated to stay suits involving claims that are subject to contractual arbitration agreements. *See Dean Witter Reynolds Inc.*, 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). A court therefore must stay litigation where a valid arbitration agreement exists and the issues in a case fall within the arbitration agreement's purview.

### B.     The Above-Referenced Action Must Be Stayed Pending the Outcome of the Arbitration Action.

This action must be stayed because the issues in the above-referenced action fall within the mandatory arbitration provisions contained set forth in the Agreement and therefore must be determined in the Arbitration Action. "The typical interpleader action proceeds in two distinct stages. During the first stage, the court determines whether the interpleader complaint was properly

---

[1] Bengal raised the issue of arbitrability in the Arbitration Action. The arbitrator will determine arbitrability after the second Preliminary Hearing. (*See* Ex. 3.)

brought and whether to discharge the stakeholder from further liability to the claimants. During the second stage, the court determines the respective rights of the claimants to the interpleaded funds." *Prudential Ins. Co. of America v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009) (internal citations omitted). The outcome of the Arbitration Action will determine who, as between AREPA and Bengal, is entitled to the Interpleaded Funds in the above-referenced action.

The foremost issue in this action and in the Arbitration Action is identical: whether AREPA is entitled to payment for its services performed at Bengal's facility after the Loss. The distribution and assignment of insurance proceeds (the Interpleaded Funds in this case) are similarly addressed in the Agreement, and, therefore, subject to arbitration. AREPA's award in the Arbitration Action will have a direct effect on the distribution of the Interpleaded Funds. If AREPA is awarded more than the amount contained in the Interpleaded Funds, then AREPA is entitled to the entirety of the Interpleaded Funds. Therefore, the Arbitration Action will resolve "the respective rights of the claimants to the interpleaded funds."

Finally, this Court is well within its right to stay the above-referenced action pending the outcome of the Arbitration Action. It is well settled that district courts have the inherent power to stay proceedings before them. The circumstances here warrant the Court's exercise of that power. *See, e.g., Chartener v. Provident Mut. Life Ins. Co.*, No. 02-8045, 2003 WL 22518526, at *1 (E.D. Pa. Oct. 22, 2003) ("A court's power to stay a pending action 'is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, counsel, and for litigants.'") (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

## **<u>CONCLUSION</u>**

In the interest of judicial economy and in accordance with substantive law, AREPA respectfully requests that this Court grant a stay of the above-referenced action pending the resolution of the Arbitration Action.

Respectfully submitted this 18th day o September, 2023.

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC

<u>/s/ *Joshua E. Swiger*</u>
Joshua E. Swiger
Attorney I.D. No. 79927
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Tel. (404) 876-2700 / Fax (404) 875-9433
jswiger@wwhgd.com
*Attorney for Defendant, Envista Forensics, LLC*
*d/b/a AREPA*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of September, 2023, I electronically filed the

foregoing Motion to Stay Proceedings with the Clerk of Court using the CM/ECF system, which

will automatically send email notification of such filing to the following attorneys of record:

Philip Priore
Christopher Regan
McCormick & Priore, P.C.
Two Commerce Center, Suite 3810
2001 Market Street
Philadelphia, PA 19103
ppriore@mccormickpriore.com
cregan@mccormickpriore.com
*Attorneys for Plaintiff, Landmark American Insurance Company*

Michael J. Casper
Wheeler Diulio & Barnabei
1617 John F. Kennedy Blvd., Suite 1270
Philadelphia, PA 19103
mcasper@WDBlegal.com
*Attorney for Defendant, Cohen & Clark, P.C.*

The following is the list of parties who are not on the list to receive e-mail notices for this

case (who therefore require manual noticing):

Bengal Converting Services, Inc.
1155 Main Street
Limerick, PA 19468

Links Debt Fund LLC
150 N. Radnor Chester Road
Suite F-200
Radnor, PA 19087

*/s/ Joshua E. Swiger*
Joshua E. Swiger (PA ID 79927)
Weinberg, Wheeler, Hudgins, Gunn
& Dial, LLC
3344 Peachtree Road, NE, Suite 2400
Atlanta, GA 30326
Tel. (404) 876-2700
jswiger@wwhgd.com

*Attorney for Defendant, Envista Forensics, LLC
d/b/a AREPA*