IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY<br>      Plaintiff,<br>v.<br>BENGAL CONVERTING SERVICES, INC.; ENVISTA FORENSICS, LLC d/b/a AREPA; LINKS DEBT FUND, LLC, THE VICTORY BANK and COHEN & CLARK, P.C.<br>      Defendants, | CIVIL ACTION FILE<br><br>NO. 23-2576 |

**DEFENDANT LINKS DEBT FUND, LLC'S AMENDED REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO RELEASE INTERPLEAD FUNDS TO CREDITOR LINKS DEBT FUND, LLC AND TO LIFT STAY**

Defendant Links Debt Fund, LLC ("Links Debt"), by and through its undersigned counsel, hereby files this Amended Reply Brief in further support of its Motion to Release Interplead Funds and to Lift Stay (the "Motion"). As will be further explained below, the Respondents have not pointed to any rule or legal standard that would supplant Links Debt's priority right to the interplead funds. Rather, it remains clear that Links Debt as the senior lien holder has a priority right to the interplead funds. Accordingly, Links Debt requests that this Court grant its Motion and award it the interplead funds.

I.  **LINKS DEBT HAS THE PRIORITY LIEN TO THE INTERPLEAD FUNDS**

Under the Uniform Commercial Code as codified in Pennsylvania, a creditor with a perfected security interest in collateral generally has an interest in the collateral that is superior to any interests of unsecured creditors. *See United States*

1

*Fidelity & Guarantee Co. v. United Penn Bank*, 362 Pa. Super. 440, 524 A.2d 958, 960 (Pa. Super. Ct. 1987); 13 Pa. C. S. § 9201. "Perfection requires (1) attachment and (2) the filing of a financing statement with state and local government offices indicating the debtor, the secured party, and the collateral attached." *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F. Supp. 2d 230, 237 (M.D. Pa. 2004), citing 13 Pa. Cons. Stat. §§ 9308(a), 9310(a), 9502 (further citations omitted).

Where two or more creditors have perfected security interests in the same collateral, the party who filed his security interest first will generally have priority. 13 Pa. Cons. Stat. § 9322 ("Conflicting perfected security interests . . . rank according to priority in time of filing or perfection. Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest . . . is first perfected.").

In this matter, the record clearly shows that Links Debt was the first creditor to perfect its security interest by filing a UCC-1 Financing Statement. Accordingly, Links Debt has priority to all of the Bengal business assets, including, but not limited to the interplead funds. *See, e.g., Domus, Inc. v. Davis-Giovinazzo Constr. Co.*, No. 10-1654, 2011 U.S. Dist. LEXIS 93426 (E.D. Pa. Aug. 22, 2011).

## II. LINKS DEBT DID NOT WAIVE OR ASSIGN ITS RIGHT TO THE INTERPLEAD FUNDS

It appears that the main challenge to Links Debt's right to the interplead funds has been voiced by Respondent Envista Forensics, LLC d/b/a AREPA ("AREPA"), who claims that equity allegedly requires that AREPA somehow be awarded the interplead funds. AREPA claims that Links Debt has somehow waived

its right to these funds, and that AREPA somehow has a priority right to the funds due to its being an alleged unpaid contractor. However, as set forth below, neither of these claims has any merit, nor do they change the simple fact that Links Debt has the priority interest in the interplead funds.

### a. LINKS DEBT DID NOT WAIVE OR ASSIGN ITS RIGHT TO THE INTERPLEAD FUNDS

AREPA's first claim is that Links Debt somehow waived its right to the interplead funds due to Scott Korn serving as both President of Bengal and as Manager for Links Debt. However, while Mr. Korn may wear many hats, any documents he signed with AREPA were done only in his capacity as President of Bengal, and did not reflect the will or consent of Links Debt, a separate company owned by a separate entity. Links Debt is not owned by Mr. Korn, and Links Debt is merely a secured creditor of Bengal. Accordingly, Mr. Korn did not waive any claim that Links Debt had in the interplead funds when he acted as an officer upon Bengal's behalf.

Further, Links Debt is not owned by Mr. Korn nor by Bengal. Rather, Links Debt is wholly owned by a third party, being the Scott H. Korn Irrevocable Delaware Trust II (the "Trust"), for which The Commonwealth Trust Company ("Commonwealth Trust") serves as Trustee. A true and correct redacted copy of the First Amended and Restated Operating Agreement of Links Debt Fund, LLC, which states that the Trust owns 100% of Links Debt, is attached hereto as Exhibit "1". The Trust is the only member of Links Debt, and the Trust owns 100% of the membership interests in Links Debt. See, Exh. "1"

Accordingly, neither Mr. Korn nor Bengal have any legal ownership interest in any asset owned by the Trust. As Links Debt is wholly owned by a third party, being the Trust for which Commonwealth Trust serves as the Trustee, it is that third party entity that maintains the secured interest in the assets of Bengal.

The Pennsylvania Uniform Trust Act (Title 20, Chapter 77, § 7701, et seq.) outlines the rights of beneficiaries, and it specifies that beneficiaries are entitled to receive certain information about the trust and its administration but do not have an ownership interest in the trust assets.

In this matter, any contracts signed by Mr. Korn with AREPA were done solely in his position as an officer of Bengal, on behalf of Bengal, and did not reflect the will or the consent of Links Debt (a separate third party entity, wholly owned by the Trust). AREPA cannot provide any documents which Mr. Korn signed with them on behalf of Links Debt in this matter, because none exist.

AREPA's claims would have this Court believe that if one person is a manager or officer of multiple companies, that any action he/she takes on behalf of one company would bind the other, even though they have no connection to the contract at issue. This would be like holding Tesla responsible for a SpaceX obligation, just because Elon Musk is an officer of both companies. This is not just a slippery slope; AREPA'S position is just plainly wrong, and would have drastic consequences for companies all across the United States.

As Links Debt has not waived any right to the interplead funds, Links Debt's Motion should be granted and it should be awarded the interplead funds.

### b. NO FURTHER DISCOVERY IS NECESSARY REGARDING LINKS DEBT

AREPA also claims that they need to conduct discovery on the relationship between Links Debt and Bengal. However, such discovery is not necessary, nor permissible.

As Links Debt is a separate company owned by the Trust, Links Debt has provided sufficient documentation regarding the ownership of Links Debt (*See,* Exh. "1"). Further, Links Debt has provided sufficient filed documentation to demonstrate that it is a secured creditor of Bengal and that it is in first lien position.

Any discovery into this alleged issue would only cause the parties to incur unnecessary legal costs, and would further delay the release of the interplead funds. Links Debt should not and cannot be required to provide any confidential or private documentation or financial information, when such information is not relevant to this matter.

According to Rule 4012 of the Pennsylvania Code, a party or the person from whom discovery or deposition is sought can file a motion for a protective order. Pa. R.C.P. 4012. Moreover, pursuant to Rule 4011, the court can issue an order to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden, or expense. Pa. R.C.P. 4011(b).

The issued order can include various measures, such as prohibiting the discovery or deposition entirely, limiting its scope, or specifying the terms and conditions under which it may occur. Pa. R.C.P. 4012(a).

Further, Rule 4003.1(a), provides that discovery is limited to "matters relevant to the subject matter involved in the pending action." Pa. R.C.P. 4003.1(a).

In this matter, all required documentation regarding ownership interests, corporate structure, and secured lien position have already been provided. The privacy and confidentiality of third parties' financial information must be protected, unless there is a compelling reason to disclose it. No compelling reason has been provided by AREPA, who seeks to proceed on an unjustified fishing expedition.

As Links Debt has already provided clear evidence of its ownership and of its security interest in the interplead funds, the discovery requested by AREPA would only be an unreasonable annoyance, embarrassment, oppression, burden, and expense to all parties.

### III. AREPA HAS NO SUPERIOR RIGHT TO THE INTERPLEAD FUNDS BEFORE LINKS DEBT

AREPA also claims that the "law favors unpaid contractors over secured creditors"; however, this is simply not true! AREPA bases this alleged rule on the Third Circuit's decision in *Gebco Inv. Corp.*, 641 F.2d 143 (3d Cir. 1981) ("*Gebco*"), but *Gebco* relates to a bankruptcy trustee, not to a perfected priority secured creditor, such as Links Debt. Additionally, there is no such hard and fast rule that would apply to the fact pattern in this matter.

Rather, the case that forms the basis for the decision in *Gebco,* being *Gee v. Eberle,* 279 Pa. Super. 101, 420 A.2d 1050 (1980) ("*Gee*"), has been clarified and limited by more recent Pennsylvania Superior Court cases. For example, in *L & W Supply Corp. v. Amin*, Nos. 3082 EDA 2012, 3083 EDA 2012, 2014 Pa. Super.

Unpub. LEXIS 3686 (Jan. 13, 2014) ("*L&W*"), the Pennsylvania Superior Court noted that a claim for unjust enrichment pursuant to *Gee* should be limited to instances where lender obtained title of the subject property after improvements were made. That cited instance has no application to this matter.

Moreover, unlike in *Gebco* or *Gee,* since the underlying property has not been sold, the benefit of AREPA's work cannot be easily calculated. Because the underlying property was sold in those prior cases, the Court in those matters was able to determine the financial benefit of the contractor's work. In this matter, no such calculation can be completed. Rather, AREPA merely claims that its work somehow benefited Bengal and Links Debt by the full value of the interplead funds. AREPA has provided no evidence of this claim.

As there is no rule or relevant case law that would provide AREPA with a priority security interest based on some alleged theory of equitable subrogation, Links Debt's Motion should be granted and Links Debt should be awarded the interplead funds.

### IV. CLARKE & COHEN, INC.'S CROSS MOTION SHOULD BE DENIED

Clarke & Cohen has also filed a response to Links Debt's Motion, wherein Clarke & Cohen alleges that its claim to a contingency fee is superior to any competing claim by Links Debt. However, Clarke & Cohen has not provided any citation to support their claim.

Clarke & Cohen instead cite to *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 588 Pa. 470, 905 A.2d 462 (2006) ("*Allstate*"), and claims that this case

somehow supports their claim that a public adjuster's claim has priority. However, this alleged holding is not found in *Allstate*. Rather, *Allstate* states that "other applicable regulations appear to assume that the contract may create a security interest in favor of the adjuster." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 588 Pa. 470, 483, 905 A.2d 462, 470 (2006) (*citing* See 31 Pa. Code § 115.3(d)(3)). However, assuming a security interest does not provide that said interest (if it even exists) has priority over a separate previously filed security interest.

While Clarke & Cohen may have a security interest in the interplead funds, neither *Allstate* nor the Pennsylvania Code provide that their assumed interest has priority over a first in time, perfected secured creditor. As there is no rule nor relevant case law that would provide Clarke & Cohen with a priority security interest, Links Debt's Motion should be granted and Links Debt should be awarded the interplead funds.

### V.   THE STAY MUST BE LIFTED AND THE INTERPLEAD FUNDS MUST BE DISBURSED TO LINKS DEBT

Finally, the Stay entered in this matter must be lifted. The purpose of this Stay was to allow Bengal and Defendant AREPA to complete the Arbitration Action; however, the result of the Arbitration Action should have no impact on Links Debt's right to the Funds.

As Links Debt is the priority security interest holder, whoever is successful in the Arbitration Action will still only have a junior claim subject to Links Debt's priority claim to the Funds. As the Arbitration Action will have no impact on Links

Debt's right to the Funds, Links Debt hereby requests that this stay be lifted to allow for the release of the secured Funds rightfully due to Links Debt.

## VI. CONCLUSION

Links Debt Fund, LLC respectfully requests that this Honorable Court enter an Order lifting any previously entered stay that prevents the release of the funds at issue, awarding all Funds at issue in this matter to Links Debt Fund, LLC, and granting Links Debt Fund, LLC such other and further relief as the Court deems just and proper.

                                                    **BERGER LAW GROUP, PC**

Dated: 3/5/24            By: *Phillip D. Berger*
                                                  PHILLIP D. BERGER, ESQ.
                                                  *Attorney for Defendant Links Debt Fund, LLC*
                                                  919 Conestoga Road, Building 3, Suite 114
                                                  Bryn Mawr, PA 19010
                                                  (610) 668-0800
                                                  Berger@BergerLawPC.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY<br>                      Plaintiff,<br>v.<br>BENGAL CONVERTING SERVICES, INC.; ENVISTA FORENSICS, LLC d/b/a AREPA; LINKS DEBT FUND, LLC, THE VICTORY BANK and COHEN & CLARK, P.C.<br>                      Defendants, | CIVIL ACTION FILE<br><br>NO.   23-2576 |

**CERTIFICATE OF SERVICE**

I, Phillip Berger, hereby certify that on this day I electronically filed the forgoing and that a copy has been served on all parties of record via the Court's ECF system.

BERGER LAW GROUP, PC

Dated: ___3/5/24___   By: *Phillip D. Berger*
PHILLIP D. BERGER, ESQ.
*Attorney for Defendant Links Debt Fund, LLC*
919 Conestoga Road, Building 3, Suite 114
Bryn Mawr, PA 19010
(610) 668-0800
Berger@BergerLawPC.com

10

EXHIBIT 1

# FIRST AMENDED AND RESTATED OPERATING AGREEMENT
## OF
## LINKS DEBT FUND, LLC

This First Amended and Restated Operating Agreement (the "*Agreement*") is made and entered into on this 12th day of June, 2023 (the "*Effective Date*") by LINKS DEBT FUND, LLC, a Pennsylvania limited liability company (the "*Company*") and SCOTT H. KORN IRREVOCABLE DELAWARE TRUST II (the "*Member*" and, collectively with any Member or Members subsequently admitted to the Company, the "*Members*").

### RECITALS:

WHEREAS, the Company was formed under the laws of the Commonwealth of Pennsylvania by the filing of a Certificate of Organization with the Department of State of the Commonwealth of Pennsylvania on March 31, 2016 (the "*Certificate*");

WHEREAS, the Company and its affairs and relationship between the Members are currently governed by that certain Operating Agreement dated March 30, 2016 (as amended, including by that certain Amendment No. 1 dated May 10, 2018, the "*Prior Agreement*");

WHEREAS, the Member is the sole member of the Company and desires to amend and restate the Prior Agreement on the terms and conditions set forth herein and for this Agreement to supersede the Prior Agreement in its entirety.

NOW, THEREFORE, in consideration of the foregoing and the premises and the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto hereby amend and restate the Prior Agreement in its entirety as follows:

1. **Formation.** The Company has heretofore been organized as a Pennsylvania limited liability company by the filing of the Certificate with the Department of State of the Commonwealth of Pennsylvania and continues under and pursuant to the Pennsylvania Limited Liability Company Act which was in effect at that time.

2. **Name.** The name of the Company is LINKS DEBT FUND, LLC.

3. **Effective Date.** This Agreement is effective as of the Effective Date.

4. **Term.** The term of the Company commenced upon the filing of the Certificate with the Pennsylvania Department of State and shall continue in perpetuity, unless the Company is earlier dissolved upon the consent of the Member or in accordance with the provisions of the Pennsylvania Uniform Limited Liability Company Act of 2016, 15 Pa.

C.S. § 8811 et. seq., and any successor statute, in each case, as amended from time to time (the "*Act*").

5. **Purpose.** The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be organized under the laws of the Commonwealth of Pennsylvania (including the Act) and, with respect to activities conducted in other jurisdictions, under the laws of such other jurisdictions.

6. **Registered Office; Principal Place of Business; Other Offices.** The registered office of the Company required by the Act to be maintained in the Commonwealth of Pennsylvania is 134 Anton Road, Wynnewood, PA 19096 or such other office (which need not be a place of business of the Company) as the Manager may designate from time to time in the manner provided by law. The principal place of business of the Company shall be at such place as the Manager may designate from time to time, which need not be in the Commonwealth of Pennsylvania. The Company may have such other offices as the Manager may designate from time to time.

7. **Qualification in Other Jurisdictions.** The Company may register in any other jurisdiction upon the approval of the Manager.

8. **Interests in Company/Capital Contributions.** As of the Effective Date, the Member is the only member of the Company and shall own all of the membership interests therein as set forth in Schedule A attached hereto. The Member may contribute cash or other property to the Company from time to time. The Member shall have no obligation or liability to contribute or otherwise provide any other funds or assets to the Company.

9. **Additional Members.** The Member may admit additional members and determine the rights and privileges associated with their membership interests.

10. **Management.** The business and affairs of the Company shall be vested in and managed by or under the direction of the manager (the "*Manager*"), who may exercise all of the powers of the Company except as otherwise prohibited by law. The Manager shall have the full power and authority to authorize, approve or undertake any action on behalf of the Company and to bind the Company without the necessity of a meeting. From and after the date of this Agreement, the Manager shall contribute to the Company sufficient time, labor and attention. The Manager may resign from the Company at any time by written resignation to the Member. Upon such resignation, the vacancy shall be filled by the Member. The initial Manager under this Agreement shall be Scott H. Korn. The Manager may: (i) appoint, by written designation or resolution filed with the records of the Company, one or more persons as officers of the Company to act on behalf of the Company and serve at the pleasure of the Manager with such titles as may be appropriate (including the titles of Chief Executive Officer, President, Vice President, Treasurer, and/

2

or Secretary) and such duties and powers as the Manager may proscribe and as are incident to the office of such officer, and (ii) delegate any and all power and authority with respect to the business and affairs of the Company to any individual or entity, including any officers or employees of the Company. The initial Manager hereby appoints Scott H. Korn as the Chief Executive Officer and President of the Company.

11.  **Dissolution.** The Company shall be dissolved in accordance with Section 4 of this Agreement.

12.  **No Liability of Members/Managers.** No Member, Manager, or affiliate of a Member or Manager, or any officer of the Company shall have any liability to the Company or to any Member for any loss suffered by the Company that arises out of any action or inaction of any Member, Manager, or affiliate of a Member or Manager, or any officer, if such Member, Manager, affiliate, or such officer, as the case may be, in good faith, determined that such course of conduct was in the best interests of the Company and if such course of conduct did not constitute gross negligence or willful misconduct of such Member, Manager, affiliate, or such officer. Each Member, Manager, and affiliate of a Member or Manager, and each officer shall be indemnified by the Company against any losses, judgments, liabilities, expenses and amounts paid in settlement of any claims sustained by it with respect to actions taken by such Member, Manager, affiliate of a Member or Manager, or such officer on behalf of the Company, provided that the Company shall not indemnify any person with respect to any matter as to which such person shall have been adjudicated in any proceeding to have acted with gross negligence or willful misconduct. Without limiting the foregoing, such indemnification may include payment by the Company of expenses incurred in defending a civil or criminal action or proceeding in advance of the final disposition of such action or proceeding, upon receipt of an undertaking by the person indemnified to repay such payment if such person shall be adjudicated not to be entitled to indemnification under this Section 12, which undertaking may be accepted without reference to the financial ability of such person to make repayment. Any indemnification to be provided hereunder may be provided although the person to be indemnified is no longer a Member, Manager or an affiliate of a Member or Manager, or an officer. Any indemnity under this Section 12 shall be paid from, and only to the extent of, Company assets, and no Member shall have any personal liability on account thereof. The indemnification provided for herein shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any agreement, vote of Members or otherwise, both as to action in their official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a Member (or an affiliate of a person who has ceased to be a Member) or officer and shall inure to the benefit of the heirs, executors and administrators of such a person. Any repeal or modification of the foregoing provisions of this Section 12 by the Members shall not adversely affect any right or protection of a Member, Manager, or affiliate of a Member or Manager, or any officer of the Company

3

existing at the time of, or increase the liability of any such person with respect to any acts or omissions of such person occurring prior to, such repeal or modification.

13. **Books and Records; Tax Matters.** The Company shall keep, or cause to be kept, complete and accurate books and records of the Company on the income tax method of reporting and otherwise in accordance with generally accepted accounting principles consistently applied, which shall be maintained and be available, in addition to any documents and information required to be furnished to the Members under the Act at the office of the Company for examination and copying by any Member, or his, her or its duly authorized representatives, at the Member's reasonable request and at the Member's expense during ordinary business hours. The Company shall cause its accountants to prepare and timely file all tax returns required to be filed for the Company.

14. **Bank Accounts.** All funds of the Company shall be deposited in one or more accounts with one or more recognized financial institutions in the name of the Company, at such locations as shall be determined by the Manager. Withdrawal from such accounts shall require the signature of the Manager or such person or persons as the Manager may designate.

15. **Allocation of Profits and Losses.** So long as the Company is wholly owned by a single Member, the Company will be treated as a "disregarded entity" for applicable federal, state and local income tax purposes and the Company will not elect to be treated as an association taxable as a corporation. Consequently, all items of income, gain, deduction, loss and credit for tax purposes shall be considered to be earned or incurred, as the case may be, directly by such single Member. In the event that the Company has more than a single Member, the Company will, unless the Members unanimously agree otherwise, be treated as a pass-through organization and all of the Company's income, profits and losses shall be allocated to the Members in accordance with their respective membership interest in the Company. The Members hereby authorize the Manager to file any necessary elections with any tax authorities to be treated as a "disregarded entity" (if there is a single Member) or a pass-through organization (if there is more than one Member) and shall be required to file any necessary tax returns on behalf of the Company with any such tax authorities as required by applicable law.

16. **Distributions.** Distributions shall be made to the Member at the time and in the aggregate amounts as determined by the Manager.

17. **Third Party Beneficiaries.** The provisions hereof are solely for the benefit of the Company and its Member(s), Manager(s), and officer(s) of the Company, and are not intended to, and shall not be construed to, confer a right or benefit on any creditor of the Company or any other person.

4

18. <u>Amendment; Governing Law</u>. This Agreement may only be amended in writing and must be signed by the Member. This Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, including the Act, as interpreted by the courts of the Commonwealth of Pennsylvania, notwithstanding any rules regarding choice of law to the contrary.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the date first above written.

COMPANY:

LINKS DEBT FUND, LLC

By: _____
Scott H. Korn, Manager

MEMBER:

SCOTT H. KORN IRREVOCABLE DELAWARE TRUST II

By: Commonwealth Trust Company, solely in its capacity as Trustee and not in its individual capacity

Its: Trustee

By: _____
Name: JAMES D. HORTY III
Title: V.P.

6

## FIRST AMENDED AND RESTATED OPERATING AGREEMENT
## LINKS DEBT FUND, LLC

### SCHEDULE A

| Member Name and Address | Membership Interest |
|---|---|
| SCOTT H. KORN IRREVOCABLE DELAWARE TRUST II<br>c/o Commonwealth Trust Company<br>29 Bancroft Mills Road<br>Wilmington, DE 19806 | 100% |

8